Pursuant to Rule 18, A.R.A.P., the United States Court of Appeals for the Eleventh *Page 791 
Circuit has certified the following question to this Court:
 "Does Alabama law impose liability under any theory — negligence, strict product liability, breach of implied warranty of merchantability, or duty to warn — on the manufacturer of an over-the-counter drug for injuries resulting from an uncommon allergic reaction of a hypersensitive user when the manufacturer was not aware nor, with the exercise of reasonable diligence, could have been aware that its product might cause such a reaction?"
The facts as certified show that Jonnie Griggs suffered a systemic illness known as Stevens-Johnson syndrome after using Vagisil, a nonprescription topical analgesic designed to relieve vaginal itch. Her doctor diagnosed her condition as having been caused by an allergic reaction to benzocaine, one of the active ingredients in Vagisil. For purposes of the question to be resolved, Combe, Incorporated, the manufacturer of Vagisil, accepts as true the assertion that the benzocaine in Vagisil caused the Stevens-Johnson syndrome suffered by Griggs.
The certification continues:
 "Evidence adduced by both sides indicates that benzocaine was not a known allergin and that, to the contrary, it has been an effective external analgesic throughout this century. Dr. Osment's deposition indicates that although he attributes the systemic reactions suffered by Griggs to the application of benzocaine, he knows of no literature associating benzocaine with Stevens-Johnson syndrome or any other type of systemic reaction. Combe offered affidavits of experts in dermatology and anesthesiology who, based on their experience and a review of pertinent available literature, stated that they had never read or heard of a causal link between the application of benzocaine to the skin and any type of systemic reaction. Combe also maintains that it has received no other complaints of systemic reactions arising from the use of Vagisil, nor has it received from any source any knowledge linking benzocaine or any other active ingredient in Vagisil to Stevens-Johnson syndrome or any other systemic reaction, although it has had several complaints of local skin irritation from its customers. The evidence was uncontradicted and the district court found that Combe had no knowledge of any users of Vagisil or its related products ever having suffered from Stevens-Johnson syndrome or any other systemic reaction caused or alleged to be caused by the use of Vagisil or any active ingredient contained therein. The parties therefore agree, assuming the tube of Vagisil was manufactured properly, that Mrs. Griggs' illness was due to her hypersensitive allergic reaction to benzocaine." (Emphasis added.)
Discovery in the district court produced references to the Food and Drug Administration proposed rule on external analgesic over-the-counter drugs, 44 Fed.Reg. 69,768 (1979), which included the following remarks on the safety of benzocaine:
 ". . . The Panel concludes that benzocaine is safe and effective for use as an OTC external anagesic as specified in the dosage section discussed below. . ..
 "Benzocaine is an effective topical anesthetic that has enjoyed widespread and long-term usage since 1903. . . .
". . . .
 ". . . Clinical use has confirmed that benzocaine is safe in the dosage range used as an OTC external analgesic.
 "Benzocaine is one of the most widely used and safest topical anesthetics found in OTC preparations. The domestic production is approximately 1 1/4 million pounds (lbs) per year. In addition, there is a quantity of benzocaine imported which adds approximately 30 percent more to the domestically produced quantity."
Id., at 69,793.
The answer to the certified question may be found from an analysis of the principles of law announced in Casrell v. AltecIndustries, Inc., 335 So.2d 128 (Ala. 1976), and Atkins v.American Motors Corp., *Page 792 335 So.2d 134 (Ala. 1976). In these cases, this Court announced the Alabama Extended Manufacturer's Liability Doctrine. The doctrine was modelled after the product liability concepts of § 402A of the Restatement (Second) of Torts (1965), with one important difference: this Court rejected the "no-fault" concept of the Restatement.
The fault concept retained in AEMLD cases is the marketing of a "defective" product, "not reasonably safe when applied to its intended use," Casrell, at 132; Atkins, at 139. The Court held that "defective" and "unreasonably dangerous" are synonymous; "a `defect' is that which renders a product `unreasonably dangerous,' i.e., not fit for its intended purpose." Casrell, at 133.
The Court noted in Atkins that although the holding "modifies the Restatement's theory of strict liability, the Comment, in large measure, retains its utility." 335 So.2d at 143, n. 5. Pertinent among the Comments is the following excerpt from Comment j:
 "Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger."
This statement makes it clear that Combe had no duty to warn of a possible allergic reaction which it had no reason to suspect might occur, under the facts as presented to us. Moreover, since the facts certified to us show that Combe could not have known "by the application of reasonable, developed human skill and foresight" that the product presented a danger of injury of the kind suffered by Griggs, we cannot say that the product was "defective" or "unreasonably dangerous." To do so would be to impose strict liability, a position expressly rejected in Casrell
and Atkins and following decisions. See, e.g., Stone v. Smith,Kline French Laboratories, 447 So.2d 1301 (Ala. 1984), andSears, Roebuck Co. v. Haven Hills Farm, Inc., 395 So.2d 991
(Ala. 1981). This result is consonant with the holding in Grau v.Procter Gamble Co., 324 F.2d 309 (5th Cir. 1963). See also, Annot., 53 A.L.R.3d 298 (1973).
The same analysis shows that Griggs cannot recover under negligence or duty-to-warn theories. If Combe could have no foreknowledge of this type of injury, it was not negligent in marketing the product, nor did it have a duty to warn of such an unforeseeable risk.
The claim under implied warranty of merchantability presents a slightly different problem. Code 1975, § 7-2-3124, defines the implied warranty of merchantability which accompanies sales by merchants such as in the instant case. Among the definitions of "merchantable" is the provision that the goods "[a]re fit for the ordinary purposes for which such goods are used." Id., § 7-2-314
(2)(c).
Our review of the authorities on this Uniform Commercial Code warranty discloses that most jurisdictions hold that if a drug is fit for use by a normal person, the manufacturer will not be liable for an uncommon allergic reaction.
 "Another area of difficulty is in dealing with drugs and cosmetics. Here, a particular individual may suffer an allergic reaction and the question will arise whether the particular product was fit for its ordinary purpose. Over a long period of distribution of the product, millions of people may have been able to use it without any reaction whatsoever. On the other hand, there may be a small group or percentage of persons as to whom an allergic reaction was caused by use of the particular product. The courts have had difficulty in answering this question but, as a usual basis for judgment, they would look to the *Page 793 
percentages involved. If the injured person was one who could be described as ultrasensitive, who suffered an allergic reaction which would be suffered by a very small or insignificant number of people, then the manufacturer would not be held liable. On the other hand, if there were a sufficient number as to whom this reaction had occurred then there would be liability imposed upon the manufacturer."
3 Bender's Uniform Commercial Code Service § 7.01 [4] (1984) (footnotes omitted).
 "It has been held or recognized in a majority of cases that if a product can be used by a `normal' person without injury, there is no breach of an implied warranty of fitness or merchantability."
3 Frumer and Friedman, Products Liability § 29.03 [1] (1984).
Among the cases which these authorities cite, that which appears to go the farthest in imposing liability is Crotty v.Spartenberg's-New Haven, Inc., 147 Conn. 460, 162 A.2d 513
(1960). Even this case would require that "an appreciable number of people" — rather than the presumably larger group of "normal" persons — would be affected.
For all that appears in the question before us, Griggs is the only person who has suffered this kind of injury in the long history of use of the drug in question. We agree with the above authorities that a product must adversely affect at least some significant number of persons before a question of "merchantability" arises. Therefore, Griggs cannot recover under this theory, either.
For the reasons stated above, we answer the certified question in the negative.
QUESTION ANSWERED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, SHORES and ADAMS, JJ., concur.