[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1225 
The trial court granted summary judgment in favor of the manufacturer of an allegedly defective PVC (plastic) plumbing cap. We affirm.
State Farm Fire and Casualty Company, as subrogee of its insured, Robert Haley, brought this indemnity action against J.B. Plastics, Inc., the manufacturer, claiming that it was liable for water damage its insured suffered because of the cap; State Farm bases its claim on negligent failure to warn, implied warranty, and on the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). The trial court granted summary judgment in favor of J.B. Plastics on all counts, and State Farm appeals.
The facts are undisputed. State Farm's insured, Haley, was experiencing a plumbing problem known as "water hammer" in his new home in Baldwin County. In an effort to alleviate this problem, Haley and a neighbor, Richardson, designed and built a "surge chamber" or "water hammer arrestor," using a length of pipe connected to the water line at one end and sealed with the J.B. Plastics cap at the other end. Haley and Richardson had selected those materials from bins of loose plumbing parts at a local supply store. Neither the bins nor the caps themselves bore instructions for proper use or any warnings against improper use of the caps. Further, neither Haley nor Richardson is an experienced plumber, and neither sought any advice at the supply store.
The evidence shows that Haley's surge chamber performed satisfactorily for approximately three months before the cap ruptured; when the cap failed, Haley suffered approximately $33,462.33 in water damage to his house and personal belongings. Upon Haley's signing a subrogation receipt, State Farm paid his claim for the water damage and brought this action against J.B. Plastics.
After discovery, which included taking the depositions of Haley and Richardson, and of engineers retained by plaintiff and defendant, J.B. Plastics moved for summary judgment. J.B. Plastics, in support of its motion, attached the pleadings; the plaintiff's interrogatories to the defendant and the defendant's responses thereto; the deposition of Robert E. Haley; the deposition of Dr. Courtney Busch, an expert witness for the plaintiff, and exhibits thereto; the affidavit and report of one Dr. Charles Kendall Clarke; the deposition of Richard Peterson, a purportedly expert witness for the plaintiff, and exhibits thereto; and the deposition of Charles Richardson, Jr. Dr. Busch, the plaintiff's materials engineer, and Dr. Clarke, consulting materials engineer for J.B. Plastics, both testified that, based on their stress tests, the cap in question was neither defectively nor negligently designed or manufactured. Both stated that the failure of the cap was due to material fatigue caused by the cap's use in an improperly designed surge chamber and by the great pressure extremes present in the system due to the improper design. One of the plaintiff's own experts, Dr. Busch, testified that this particular homemade water hammer arrestor installed by Haley was not the proper method to cope with the water hammer problem, and that a properly designed arrestor would have contained a separate chamber or bladder to keep air entrapped and not allow the cushion (which absorbs the shock of the water hammer) to dissipate and fill with water. In his opinion, the cap was not defective. It simply was not designed to withstand the cyclic loading or alternating pressures to which it was improperly subjected.
Similarly, Dr. Clarke stated in his affidavit and report that the failure of the water hammer arrestor was not the result of a manufacturing defect in the cap, but rather of a defect in the Richardson design of the arrestor. In his opinion, the "notch" created where the cap met the pipe created an ideal crack initiation site where the enormous cyclic pressures caused by the improper Richardson design collected, thus *Page 1226 
accentuating the lack of a separate air chamber.
J.B. Plastics contends that Haley misused its product and thus cannot maintain either an action for product failure, seeBanner Welders, Inc. v. Knighton, 425 So.2d 441 (Ala. 1982);McCaleb v. Mackey Paint Mfg. Co., 343 So.2d 511 (Ala. 1977), or an action for failure to warn, McCaleb, supra.
In its brief in opposition to summary judgment, and again before this Court, the plaintiff argues that a scintilla of evidence and a jury question was raised as to all counts. The plaintiff bases much of its argument on the opinions of two purported expert witnesses and on a letter it received from the defendant's insurer, Aetna Casualty and Surety Company, which stated that the cap was not for household use. J.B. Plastics contends that neither of the two witnesses was qualified to testify as experts in this matter, and thus that their testimony as to matters of plumbing and materials failure was due to be disregarded by the trial court; J.B. Plastics also contends that the letter from Aetna is inadmissible for any purpose and should, therefore, also be disregarded.
We agree with J.B. Plastics that the Aetna letter, which was attached to State Farm's brief in response to the motion of J.B. Plastics for summary judgment, does not create an issue of fact sufficient to defeat summary judgment. This letter, from Bryan Bower of Aetna Casualty and Surety Company to State Farm's attorney, dated March 1, 1984, is inadmissible under the provisions of Rule 56, Ala.R.Civ.P. But, even if we should consider the letter as evidence in opposition to the motion for summary judgment, all the letter states is that the cap manufactured by J.B. Plastics should not have been used by State Farm's insured on a water hammer arrestor. It points out that the cap was manufactured for use primarily on sprinklers and in pool systems "where an extreme amount of pressure is not needed." At most, the letter states that the cap should not have been used in situations where it would be subjected to extremes in water pressure.
As to the claim of J.B. Plastics' that two of the plaintiff's three proffered "experts" are unqualified to render expert opinions, we also agree. "[T]o qualify as an expert witness, it must appear that by study, practice, experience, or observation, as to the particular subject matter involved, the witness has acquired a knowledge beyond that of ordinary witnesses." Independent Life Acc. Ins. Co. v. Aaron, 282 Ala. 685, 213 So.2d 847 (1968). From all of the evidence before the court, the trial judge was authorized to hold that Peterson and Richardson, the challenged witnesses, were not competent to express expert opinions regarding the propriety of the design of the surge chamber, the cause of the cap's failure, or whether the failure was the result of any negligence or defect in the cap's design or manufacture. Richardson, who designed the chamber for Haley, is a retired communications engineer whose only apparent knowledge of hydraulics and surge chambers came from an undergraduate course during his school years. Peterson, a civil engineer, likewise has no training in hydraulics or in metallurgy or materials failure; although he stated in his deposition that he, in all likelihood, would have designed the surge chamber the same as Richardson did, Peterson has no basis in specialized training or experience on which to base that testimony, under the principles set out in Aaron,supra. Indeed, Peterson deferred to Dr. Busch's experience when asked in deposition about the cause of the cap's fatigue and failure. While both men stated that they believed that the installation of the chamber was proper, and that the materials and design were appropriate, their testimony does not contain a scintilla of evidence to prove any of the plaintiff's claims.
Based on the testimony of the only two qualified experts in this case, this Court must conclude that the trial court did not err in holding that the plaintiff failed to produce a scintilla of evidence that the cap was either negligently designed or manufactured, or that there was liability under *Page 1227 
the AEMLD as that doctrine is expressed in Casrell v. AltecIndustries, Inc., 335 So.2d 128 (Ala. 1976), and Atkins v.American Motors Corp., 335 So.2d 134 (Ala. 1976). As stated above, both experts concluded that the cap failed, not due to any defect in itself, but it was used in a defective design, and in an improper application.
State Farm further contends that it presented a scintilla of evidence on its claim of a negligent failure to warn. State Farm cites the case of Outlaw v. Firestone Tire Rubber Co.,770 F.2d 1012 (5th Cir. 1985), wherein the Fifth Circuit correctly stated Alabama law, that the existence of a duty to warn and the adequacy of a warning are questions of fact for the jury:
 "The district court's primary concern was its perception that Outlaw failed to prove a necessity to warn. It found first that the danger of an injury such as that suffered by plaintiff was too remote and unforeseeable to require a warning and, second, that Outlaw failed to produce any evidence of what would constitute an adequate warning in such circumstances.
 "As stated earlier, Alabama law imposes a duty to warn of inherent and imminent dangers in a product when used in its usual manner. Rivers v. Stihl, Inc., 434 So.2d 766, 773 (Ala. 1983). Whether there is a duty to warn, and if so, the adequacy of the warning are usually questions for the jury. Lowe v. General Motors, 624 F.2d 1373, 1381-82 (5th Cir. 1980). The issue may be withdrawn from the jury only if the risk is so remote that reasonable persons could not agree on the existence of a duty to warn. See Grau v. Procter Gamble Co., 324 F.2d 309 (5th Cir. 1963); Griggs v. Combe, Inc., 456 So.2d 790 (Ala. 1984). After a careful review of the evidence, we find that reasonable persons could find a duty to warn of the risk of a tire explosion under these conditions. As such, the jury was entitled to decide whether there existed such a duty."
Id. at 1014-15.
We believe that, under the facts of this case, there was no duty to warn of the pressure capacity of the PVC plumbing cap. A manufacturer's duty to warn of the dangerous propensities of a product arises only when the product is unreasonably dangerous when put to its intended use. McCaleb v. Mackey PaintMfg. Co., 343 So.2d at 514. All of the direct evidence, and the logical inferences which can be drawn from that evidence, indicate that the cap was misused and that the misuse was the direct cause of its failure. Under McCaleb, as a matter of law, J.B. Plastics had no duty to warn of possible failure of the PVC plumbing cap. Cf., Comments, The Drug Manufacturer's Dutyto Warn and the Alabama Extended Manufacturer's LiabilityDoctrine, 37 Ala.L.Rev. 681 (1986), which also discusses Alabama law on the duty to warn in product liability cases involving products other than drugs; cf., also, Gurley v.American Honda Motor Co., 505 So.2d 358 (Ala. 1987). For that reason, summary judgment was also properly granted on State Farm's claim of a negligent failure to warn.
As to the plaintiff's count based on an implied warranty of merchantability under Code 1975, § 7-2-314, the plaintiff has failed to state a claim for which relief may be granted. While Alabama's version of U.C.C. § 2-318 has abolished privity requirements in actions involving injuries to natural persons, the privity requirements still remains in cases of strictly economic injury. See Simmons v. Clemco Industries,368 So.2d 509 (Ala. 1979); Chandler v. Hunter, 340 So.2d 818
(Ala.Civ.App. 1976); Dudley v. Bayou Fabricators, Inc., 330 F. Supp. 788
(S.D.Ala. 1971).
In summary, under the above-stated law and facts, we determine that the plaintiff, State Farm, has failed to state a cause of action under Code 1975, § 7-2-314, has failed to produce a scintilla of evidence that the defendant negligently or defectively designed or manufactured the PVC cap in question, and has failed to establish that there was a duty on the part of J.B. Plastics to warn against misuse of its product. Therefore, this Court affirms the defendant's summary judgment as to all counts.
AFFIRMED. *Page 1228 
TORBERT, C.J., and BEATTY and HOUSTON, JJ., concur.
ALMON, J., concurs in the result.