The issue in this case is whether the trial court erred in entering a summary judgment in favor of the defendant — the operator of a grocery store — on the plaintiffs' claim that the defendant was liable for injuries that the plaintiffs allege were caused by ingesting celery hearts that had been treated with sodium bisulfite before one of the plaintiffs purchased them from the defendant's store.
Delchamps, Inc., the defendant, operates grocery stores in Baldwin County, Alabama, along with many other stores around the country. Delchamps routinely inspects produce for freshness and quality at its warehouse. Delchamps also requires its suppliers to certify that they are complying with pesticide and insecticide regulations. Delchamps also specifically instructs its suppliers not to use the insecticide Alar.
On July 14, 1990, the plaintiff, Beverly Allen, purchased from a Delchamps grocery store in Baldwin County two bags of celery hearts that had been prepackaged in cellophane wrapping by Delchamps's supplier. Delchamps had inspected samples of the celery at its warehouse for freshness and quality.
On the afternoon of July 14, Mrs. Allen washed and ate a piece of the raw celery. Mrs. Allen suffers from asthma, and she had an immediate anaphylactic reaction. Three days later, her husband, the plaintiff Jeffrey F. Allen, took the two bags of celery, one opened and one unopened, to a testing laboratory in order to determine the cause of Mrs. Allen's reaction to the celery. The laboratory concluded that 1.2 parts per million of sodium bisulfite were on the celery in the unopened bag and 0.5 part per million of sodium bisulfite was on the celery in the opened package from which Mrs. Allen had eaten.
Dr. William N. Sokol examined Mrs. Allen and concluded that Mrs. Allen is an asthmatic who is sensitive to metabisulfites. There was evidence presented that approximately 1.2 percent of the world population are asthmatics, that approximately 8 percent of asthmatics are sensitive to sulfites, and that approximately .096 percent of the world population are asthmatics who are sensitive to sulfites. In the instant case, both parties concede that about 1.2 percent of the population are asthmatics and that 8 percent of those are sulfite sensitive. Applying these percentages to the latest federal census figures, more than 200,000 people nationwide and more than 3800 people statewide would be sulfite-sensitive asthmatics.[1]
In November 1990, Mrs. Allen sued Delchamps, Inc., and several other defendants, asserting causes of action based on negligence and wantonness, the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), and breach of the implied warranty of merchantability under Ala. Code 1975, § 7-2-314. Mr. Allen also sued, claiming a loss of consortium. Delchamps moved for *Page 1067 
summary judgment, and the trial court granted the motion as to all of the plaintiffs' claims. The court then certified the summary judgment as final pursuant to Rule 54(b), Ala.R.Civ.P.
The standard of review applicable to a defendant's summary judgment motion is well established. Rule 56(c), Ala.R.Civ.P., provides that summary judgment is proper when the movant makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, unless the nonmovant rebuts that showing by substantial evidence creating a genuine issue of material fact.See § 12-21-12, Ala. Code 1975; Cain v. Sheraton Perimeter ParkS. Hotel, 592 So.2d 218, 219-20 (Ala. 1991).
With regard to the plaintiffs' negligence and wantonness claims, we note that the standard of care for retail grocers selling prepackaged closed containers of food was established in Kirkland v. Great Atlantic Pacific Tea Co., 233 Ala. 404,171 So. 735 (1936). In upholding the dismissal of an action against a retailer who had sold a prepackaged sack of flour containing a poison that injured the plaintiff, this Court said:
 "In this day the grocer's stock consists in much of canned goods, goods in bottles, cartons, sacks, packages of great variety, . . . sold at retail in the unopened package. In common reason the grocer could not inspect the contents of every sack of flour he handles. No one expects him to do so. To impose a legal duty so to do is too exacting."
Id., at 406, 171 So. at 737. This Court also said in Kirkland
that a retailer of prepackaged closed containers of food should not be held liable if he purchased from a reputable manufacturer or dealer and the imperfections were not readily ascertainable. Id. This case, however, involves fresh produce contained in perforated clear plastic bags closed by a plastic twist-tie or tape. The defendant did in fact open samples of the celery to inspect it for freshness and quality.
Furthermore, the plaintiffs assert a claim of negligence per se based upon the defendant's alleged violation of the federal Food, Drug Cosmetic Act (F.D.C.A.) and FDA regulations promulgated thereunder indicating that sodium bisulfite is not safe when "used on fruits or vegetables intended to be served raw to consumers or sold raw to consumers or to be presented to consumers as fresh" and prohibiting its use in this manner.21 C.F.R. § 182.3739. See 21 U.S.C. § 331(b), 342(a)(2)(C), 348
(prohibiting "[t]he adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce" and stating that "[a] food shall be deemed adulterated . . . if it is, or it bears or contains, any food additive which is unsafe within the meaning of [21 U.S.C. § 348]"). Fox v. Bartholf,374 So.2d 294, 295-96 (Ala. 1979), establishes the requirements for a case of negligence per se:
 (1) The statute must have been "enacted to protect a class of persons which includes the litigant seeking to assert the statute";
 (2) The injury complained of must be "of a type contemplated by the statute";
 (3) "The party charged with negligent conduct must have violated the statute"; and
 (4) "The jury must find [that] the statutory violation proximately caused the injury."
There is substantial evidence that would allow a reasonable person to find that these requirements were met in this case. The FDA stated in adopting the sulfite regulations that "addressing the potential hazards to sulfite-sensitive individuals" was its primary concern and that "the purpose of this regulation is to respond to a serious health concern."51 Fed.Reg. 25021, 25022 (1986). Expert medical testimony indicated that Mrs. Allen is a sulfite-sensitive individual and that the amount of sodium bisulfite on the celery would be sufficient to cause a reaction. That evidence is sufficient to raise a genuine issue of material fact as to whether the statute was violated and whether the violation, if any, proximately caused the injury. Thus, the summary judgment is improper as to the negligence and wantonness claim.
Delchamps asserts that the summary judgment was proper because, it says, no private right of action exists under the *Page 1068 
F.D.C.A., 21 U.S.C. § 301 et seq. (1988). Delchamps is correct that there is no private cause of action for civil damages under the F.D.C.A. Pacific Trading Co. v. Wilson Co.,547 F.2d 367 (7th Cir. 1976). See also, 21 U.S.C. § 337 (1988) ("All such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."). However, the plaintiffs in this case are not suing directly under the F.D.C.A. or its accompanying regulations. Rather, they are relying on the regulations to establish a duty or standard of care. See Grove FreshDistributors, Inc. v. Flavor Fresh Foods, Inc., 720 F. Supp. 714,716 (N.D.Ill. 1989) ("Although courts have held that there is no private cause of action under the FDCA, Grove Fresh has not brought suit directly under the FDCA or its accompanying regulations. Grove Fresh relies on the FDA regulation merely to establish the standard or duty which defendants allegedly failed to meet. Nothing prohibits Grove Fresh from using the FDCA or its accompanying regulations in that fashion."). Seealso Lowe v. General Motors Corp., 624 F.2d 1373, 1380 (5th Cir. 1980) (holding that in Alabama violation of the National Traffic and Motor Vehicle Safety Act is evidence of negligence per se). Therefore, the summary judgment cannot be supported on the basis that the F.D.C.A. provides no private cause of action for damages.
In regard to their AEMLD claim, the plaintiffs must prove that Mrs. Allen "suffered injury or damages to [herself] or [her] property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer." Atkins v. American Motors Corp.,335 So.2d 134, 141 (Ala. 1976). Similarly, the plaintiffs' implied warranty of merchantability claim requires that the plaintiffs show that the goods were unmerchantable or unfit for the ordinary purposes for which they are used. Ala. Code 1975, §7-2-314. These two standards "go hand-in-hand," at least as applied to food products, "for it is apparent that a food product is defective or unreasonably dangerous if it is unmerchantable or unfit for human consumption." Cain v.Sheraton Perimeter Park S. Hotel, 592 So.2d 218, 220 (Ala. 1991) (quoting Ex parte Morrison's Cafeteria of Montgomery, Inc.,431 So.2d 975, 977 (Ala. 1983)).
This Court has adopted the "reasonable expectations" test for determining if food is unmerchantable or unreasonably dangerous. Cain, 592 So.2d at 221; Morrison's,431 So.2d at 978. Under this test, the pivotal issue is what is reasonably expected by the consumer in the food as served, and the "[n]aturalness of the substance to any ingredients in the food served is important only in determining whether the consumer may reasonably expect to find such substance in the particular type of dish or style of food served." Morrison's,431 So.2d at 978 (quoting Zabner v. Howard Johnson's, Inc., 201 So.2d 824,826 (Fla.Dist.Ct.App. 1967)). Because the terms "defect," "unreasonably dangerous," and "merchantable" all focus on the expectations of the consumer, this Court has found the reasonable expectations test to be compatible with both the AEMLD and the implied warranty of merchantability. Cain,592 So.2d at 221. "Generally, the question of what a consumer is reasonably justified to expect to find in his food is a question for the jury, unless the court finds, as a matter of law, that the consumer would reasonably expect to find the item in his food." Id. In adopting the federal regulations prohibiting sodium bisulfite on raw produce, the FDA stated:
 "[C]onsumers do not generally expect raw fruits and vegetables that have the appearance of freshness to contain preservatives. In addition, because the majority of raw fruits and vegetables sold in grocery stores are sold in bulk and are not usually labeled, consumers are not likely to associate raw produce with the presence of preservatives such as sulfating agents."
51 Fed.Reg. 25021, 25022 (1989). Whether sulfite preservatives on fresh produce are within the reasonable expectations of a consumer is a question for a jury. See Cain, 592 So.2d at 221, where this Court held that "the reasonable expectation of a consumer is usually a question for the jury."
Delchamps asserts that this case is different fromCain because in Cain the summary judgment on the AEMLD claim was based *Page 1069 
on the trial court's finding that the AEMLD did not apply, whereas in this case, Delchamps says, the summary judgment on the AEMLD claim was based on evidence establishing a lack of causal relation. To establish the defense of a lack of causal relation, the defendant may show "that there is no causal relation in fact between his activities in connection with handling the product and its defective condition." Atkins v.American Motors Corp., 335 So.2d 134, 143 (Ala. 1976). One way to establish this lack of a causal relation is for the defendant to show:
 "[T]hat he is in the business of either distributing or processing for distribution finished products; he received a product already in a defective condition; he did not contribute to this defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer."
Id.
While Delchamps showed that it is in the business of distributing finished products, that it received a product already in a defective condition, and that it did not contribute to the defective condition, it, nevertheless, did not show conclusively that it did not possess an "opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer." Id. The plaintiffs showed that Delchamps did inspect for freshness and quality and did have procedures for requiring its suppliers to certify compliance with other regulations regarding insecticides and pesticides. Whether Delchamps's opportunity to discover or to know of the defect is superior to that of the consumer is a genuine issue of material fact; therefore, the court erroneously entered the summary judgment as to the AEMLD claim. Delchamps is entitled to present evidence and to argue that there was no causal relation between what it did or failed to do and Mrs. Allen's injuries, but it must do so to the factfinder.
Delchamps asserts that Mrs. Allen is a member of a very small or insignificant number of people who could be affected by sodium bisulfite and, therefore, that it cannot be held liable for breach of the implied warranty of merchantability. InGriggs v. Combe, Inc., 456 So.2d 790, 793 (Ala. 1984), this Court held that the manufacturer of a drug would not be held liable "[i]f the injured person was one who could be described as ultrasensitive, who suffered an allergic reaction which would be suffered by a very small or insignificant number of people." Id (Quoting 3 Bender's Uniform Commercial Code Service
§ 7.01[4](1984)). In Griggs, the evidence indicated no known case in which the drug in question had ever caused an allergic reaction in anyone else. Griggs, 456 So.2d at 791. In this case, however, the facts are very different. In fact, the FDA considered the number of sulfite-sensitive people to be significant enough to promulgate regulations banning its use on fresh produce. 51 Fed.Reg. 25021-26 (1986). The facts inGriggs, therefore, are significantly different, and the Griggs
principle is not applicable to the facts of this case. The summary judgment on the implied warranty of merchantability claim, therefore, was improper.
Based on the foregoing, we reverse the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.
[1] 0.012 (percentage of asthmatics in population) x 0.08 (percentage of asthmatics who are sulfite sensitive) = 0.00096 (percentage of sulfite-sensitive asthmatics in the population). 0.00096 (percentage of sulfite-sensitive asthmatics in the population) x 248,709,873 (population of the United States) = 238,761 (number of sulfite-sensitive asthmatics in the United States). 0.00096 (percentage of sulfite-sensitive asthmatics in the population) x 4,040,587 (population of Alabama) = 3879 (number of sulfite-sensitive asthmatics in Alabama). Population figures taken from Bureau of the Census, U.S. Dep't of Commerce, 1990 CPH-1-1, 1990 Census of Population and Housing: Summary Population and Housing Characteristics United States 1.