21 F.3d 1113
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Bryant FENTON; Barbara J. Fenton, individually, and the
marital community composed thereof, Plaintiffs-Appellees,
v.
STERLING PLUMBING GROUP, INC., a foreign corporation; and
John Does One Through Four, Defendants-Appellants.
 No. 92-36946.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1994.
Decided April 8, 1994.
 
 Before: GOODWIN, SCHROEDER and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sterling Plumbing appeals, following a bench trial, the court's judgment that Sterling is liable under Alabama product liability law[1] and its award of damages in favor of Bryant Fenton in the amount of $390,204.29. The district court found (1) that the box Fenton was unloading when he fell was unreasonably dangerous, and (2) that Fenton's injuries were reasonably foreseeable. Sterling contends these findings are clearly erroneous. Sterling alternatively contends that the district court erred in awarding damages to Fenton for medical expenses that have been paid for by his insurance carrier. We affirm.
 
 
 3
 To recover under the Alabama Extended Manufacturers Liability Doctrine (AEMLD), a plaintiff must show, among other things, that "he suffered injury or damages to himself ... by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer...." Casrell v. Altec Indus., Inc., 335 So.2d 128, 132 (Ala.1976); see Jordan v. General Motors Corp., 581 So.2d 835, 837 (Ala.1991). Alabama courts consistently hold that whether a product is unreasonably dangerous generally is a question for the trier of fact. Morrison's Cafeteria v. Haddox, 431 So.2d 975, 978-79 (Ala.1983); Casrell, 335 So.2d at 133.
 
 
 4
 The district court found that handholds on the APTS Multi-Pack tend to tear during normal use, and that such tearing proximately caused Fenton's injuries. Sterling correctly notes that under Alabama law, unreasonable danger cannot be inferred merely from the fact that the handholds on the box used by Fenton tore. E.g., Brooks v. Colonial Chevrolet-Buick, Inc., 579 So.2d 1328, 1331-32 (Ala.1991). Fenton was required to introduce evidence to show that handholds on the APTS Multi-Pack tear when the box is used as intended. See Jordan, 581 So.2d at 836-38.
 
 
 5
 At trial, both sides offered the testimony of experts to establish the amount of force that was required to drag a Multi-Pack full of bathtubs across the floor of Fenton's truck. Expert testimony also was used to establish the amount of force necessary to tear the handholds on the Multi-Pack in laboratory experiments. The experts were, essentially, in agreement that it took 90 pounds of force, at most, for Fenton to move the box along the floor of his truck by dragging the box by the handholds. Plaintiffs' expert, Robert Cooksey, testified that according to laboratory tests he had performed, it took about 140 pounds of force to tear a single handhold on the Multi-Pack. In a deposition admitted into evidence, defendant's expert, Herbert Schueneman, initially testified that according to his tests, the breaking point of a handhold on the Multi-Pack was between 100 and 150 pounds. Later in the deposition, Schueneman corrected himself, and, indicating that he had misspoken, testified that the handholds broke at a force of 150-170 pounds. The corrected figures given by Schueneman are consistent with test results he had recorded before the deposition.
 
 
 6
 In its findings of fact, the district court referred to Schueneman's deposition testimony that the handholds failed at 100 to 150 pounds. Sterling contends that the court's reliance on Schueneman's misstatement was error, and that with Schueneman's testimony as corrected, the evidence in the record indicates that the handholds tear at 140 pounds of force at the least. Because the experts agree that Fenton required no more than 90 pounds of force to move the box, Sterling argues, there is no support for the district court's conclusion that the box was unreasonably dangerous.
 
 
 7
 The district court did err to the extent it relied on Schueneman's testimony before it was corrected. Sterling, however, identified the error for the court in a motion to amend judgment, or for new trial, and the court denied the motion. Our task on appeal becomes to determine whether there is other evidence in the record, beyond Schueneman's misstatement, that supports the court's finding that the Multi-Pack was unreasonably dangerous. We find that there is such evidence.
 
 
 8
 First, testimony of both experts supports the court's finding that because the Multi-Pack's handholds are not reinforced, they tend to weaken due to "vibration during transit, downstacking, the wax on the box, the age of the corrugated material, the die cutting process, the amount of abuse, mishandling or other degradation of the board, and the temperature at which the container is handled."
 
 
 9
 Second, evidence supports the court's finding that tearing of cardboard box handholds "is a phenomenon generally understood by members of the packaging and plumbing industries." A video tape produced by the Kohler Company, Sterling's parent, in 1991 contains a demonstration on the proper handling of corrugated cardboard boxes, and it warns users that lifting, pulling, or dragging corrugated boxes by the handholds may cause property damage.[2]
 
 
 10
 Finally, the plaintiff's expert opined that regardless of the specific tearing points of the Multi-Pack under laboratory conditions, handholds in the Multi-Pack are a "bad idea" in general, and that handholds are uncommon in the industry due to their propensity to fail. In light of the experts' testimony and the video tape, there was evidence to support the court's finding that handholds on the Multi-Pack tear during normal use. This finding was not clearly erroneous, notwithstanding the court's reliance on Schueneman's later corrected deposition testimony.
 
 
 11
 Sterling next contends that even assuming that the Multi-Pack was unreasonably dangerous, Fenton failed to show that his injuries were "reasonably foreseeable." See Atkins v. American Motors Corp., 335 So.2d 134, 142 (Ala.1976). Sterling contends that Fenton did not show foreseeability because he presented no evidence that the Multi-Pack previously has failed under similar conditions. The requirement of reasonable foreseeability means only that the injury sustained by the plaintiff must have been foreseeable, not the defect itself. Accord Griggs v. Combe, Inc., 456 So.2d 790 (Ala.1984). To adopt Sterling's view of Alabama product liability law--that the defect itself (or the unreasonably dangerous condition) must be reasonably foreseeable--would import a negligence standard to product liability cases. This would be clearly inconsistent with the intent of the Alabama Supreme Court in establishing AEMLD; fault is shown by proving that Sterling sold an unreasonably dangerous product, regardless of whether handhold failure was foreseeable. See Atkins, 335 So.2d at 138-41. In this case, the type of injury sustained by Fenton--a damaged elbow sustained after he fell out of the tailgate of the truck--is precisely the type of injury that is foreseeable to the supplier of a box with handholds that tear under normal use. The district court did not err in finding Sterling liable under Alabama product liability law.
 
 
 12
 Sterling finally argues that the damage award in this case must be reduced by $19,762.24, the amount Fenton received from his insurance company for his medical expenses. The dispute in this case is whether Fenton has proved that he must repay his insurance company if he recovers from Sterling, as is required by Alabama law to recover medical expenses paid by an insurance carrier. See Ala.Code Sec. 6-5-524.
 
 
 13
 The district court's implicit conclusion that Fenton was required to repay his insurance company is supported by plaintiff's exhibit 131(c), a letter from Fenton's insurance carrier notifying his counsel of the carrier's right to repayment. Sterling argues that this exhibit was never admitted, but this argument is frivolous in light of the district court's explicit order clarifying the record to indicate that this exhibit was, in fact, admitted and considered by the court. (CR 184). We need not address Sterling's argument that the letter contains inadmissable hearsay, for the actual existence of plaintiffs' obligation to the insurer is clear in this record and cannot now be disputed. The language of the policy and the amount of the lien were presented in an affidavit that was before the district court and never challenged. On appeal, the appellant has acknowledged the accuracy of the characterization in the affidavit itself and has quoted the language of the policy in its own opening brief. The district court did not err in concluding that because Fenton must repay his insurance company, Alabama's modified collateral source rule does not apply and Sterling is liable for Fenton's medical expenses.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Neither Fenton nor Sterling challenges on appeal the district court's decision to apply Alabama law in this case
 
 
 [2]
 Sterling objected to the admission of this tape, arguing that it was not properly authenticated and was not probative of any issue before the court. We find that because the tape carries the Kohler logo and mark, it is self-authenticating. Fed.R.Evid. 902(7); see id. (application note). Moreover, Sterling produced the tape during discovery and has never seriously contended that the tape is anything other than what Fenton claims--a tape, produced by Kohler, outlining the proper handling of cardboard boxes. With respect to the tape's probative value, notwithstanding the fact that it instructs viewers on the use of boxes other than the Multi-Pack, it was relevant to the purpose for which it was used by the district court--finding that in general, corrugated cardboard box handholds tend to fail during normal use