The United States Court of Appeals for the Eleventh Circuit has certified to this Court the following question, pursuant to Rule 18, Ala.R.App.P.:
 "Does a heart valve implantee have a valid cause of action for fraud under Alabama law if he asserts that the valve's manufacturer fraudulently induced him to have the valve implanted when the damages that he asserts do not include an injury-producing malfunction of the product because the valve has been and is working properly?"
 Facts
Garshasb Farsian sued Shiley, Inc., and its parent, corporation, Pfizer, Inc. (hereinafter collectively referred to as "Shiley"), alleging, among other things, that they had fraudulently induced Farsian to receive a Bjork-Shiley heart valve implant by not revealing to Farsian certain risks and defects. Shiley moved for a summary judgment, contending that because Farsian's valve was working properly, the claim should fail. Although the district court denied Shiley's motion, the court certified, pursuant to 28 U.S.C. § 1292(b), that the order involved a controlling question of law as to which there is substantial ground for difference of opinion, and the United States Court of Appeals for the Eleventh Circuit permitted an interlocutory appeal.
Farsian alleges that when his cardiologist recommended heart surgery in 1980 he discussed with Farsian two types of heart valves. According to Farsian, the doctor recommended Shiley's valve because, the doctor said, it was an outstanding valve and would never have to be replaced. The alternative, a pig valve, would wear out in 10 or 15 years and would have to be replaced.[1] Farsian asserts that he relied on information provided by his doctor and from Shiley indicating that Shiley's heart valve was the best on the market and would last indefinitely, and that, consequently, he chose to have Shiley's heart valve implanted.
Farsian now contends that he was misled. Farsian argues that during clinical trials in 1978, Shiley's heart valve experienced the first of many strut failures.[2] Farsian alleges that Shiley told the FDA that the failure was an anomaly. As of 1990, however, Shiley had reported a total of 295 fractures, resulting in 178 deaths.[3] Farsian contends that when he received Shiley's heart valve in 1981, Shiley was engaging in fraudulent conduct by marketing the valve despite knowing of serious manufacturing problems that directly related to the fracture problem in the valve. Farsian also contends that Shiley never informed him or his physician of the fracture problem before the implantation. Farsian argues that Shiley misled physicians and the public by understating the incidence of strut fractures in a "Dear Doctor" letter in 1980 and by instructing the valve's creator not to publish any information relative to strut fracture. Shiley removed some of these heart valves from the market in 1985; Farsian alleges that it did so under pressure from the Health Research Group and the FDA. It removed all remaining valves in 1986. Farsian asserts that he would not have allowed Shiley's valve to be implanted in his heart had he known of the strut fracture risk.
Farsian sued Shiley in an Alabama state court, alleging that Shiley had made intentional, reckless, or negligent misrepresentations about the fitness of the valve; that he *Page 407 
had relied on the representations; and that Shiley had known the representations to be false. Farsian also alleges that Shiley fraudulently concealed and withheld information from him and his medical providers regarding strut fracture with the intent to deceive, and he alleges that Shiley fraudulently induced him to have the Bjork-Shiley valve implanted. As a result of Shiley's conduct, Farsian contends, he has suffered damage to the extent that the implanted valve, with its higher rate of fracture and risk of death, is worth less than the valve would have been worth if it had been what Shiley represented it to be. Farsian also alleges that he has suffered mental anguish and emotional distress since he learned of Shiley's fraud. Moreover, he states that he wishes to undergo surgery to have the Shiley's valve removed and replaced, and he seeks remuneration for the expenses related to this procedure. Farsian also seeks punitive damages.
The case was removed from the state court to a federal court based on diversity of citizenship. Thereafter, Shiley moved for a summary judgment, contending that although Farsian alleges a risk of possible future malfunction of the valve, it is uncontroverted that Farsian's valve is and has been working properly. Shiley contends that Farsian is really asserting a product liability claim. Shiley asserts that under Alabama product liability law, a cause of action regarding an implanted medical device accrues only when an "injury-producing malfunction" occurs. According to Shiley, an allegation of fraud does not relieve the consumer from having to prove an "injury-producing malfunction. Because Farsian has suffered no injury-producing malfunction, Shiley argues that Farsian's claim fails.
Farsian, however, maintains that his claim is based on fraud, not product liability. Farsian contends that, in Alabama, claims against manufacturers are not governed by a product liability law that subsumes all other theories of liability. Therefore, he argues that he may recover damages on his fraud claim even if he cannot prove that his valve is not working properly.
 Analysis
The question certified to this Court concerns whether Farsian may maintain a fraud claim under Alabama law. We conclude that he may not.
Regardless of how Farsian pleads his claim, his claim is in substance a product liability/personal-injury claim — Farsian seeks damages because of the risk that his heart valve may one day fail. Alabama courts have never allowed a recovery based on a product that, like Farsian's valve, is and has been working properly. Each of our prior cases in which fraud or other intentional conduct was alleged has involved a failure, a malfunction, or an accident that involved the defendant's products and which injured the plaintiff. See Quality Homes Co.v. Sears, Roebuck Co., 496 So.2d 1 (Ala. 1986); TreadwellFord, Inc. v. Campbell, 485 So.2d 312, 313 (Ala. 1986), appealdismissed, 486 U.S. 1028, 108 S.Ct. 2007, 100 L.Ed.2d 596
(1988).
Under Alabama law, Farsian's fear that his valve could fail in the future is not, without more, a legal injury sufficient to support his claim. Although the facts as presented by the Court of Appeals indicate that the Bjork-Shiley heart valve has experienced problems with strut failures, Farsian's concern that his heart valve, which is presently functioning normally, could later malfunction is not an injury recognized by Alabama law.
Other courts have refused to recognize a cause of action in similar cases when the heart valve has not failed. In Angus v.Shiley Inc., 989 F.2d 142 (3d Cir. 1993), the recipient of a heart valve sued Shiley, charging that the manufacturer was liable to her because, the plaintiff Angus said, it had deliberately manufactured the valves notwithstanding its knowledge of a strut fracture problem, had failed to warn her of the problem, had misrepresented the product, and had concealed its knowledge of the problem. Angus further charged that by reason of Shiley's conduct she suffers from severe mental anguish, anxiety, fear, worry, depression and other emotional distress, including the constant fear of sudden death or permanent physical injury. Angus contended that her mental state caused her to experience physical ailments, including sleep disturbances, *Page 408 
frequent panic feelings, nervousness with breathing difficulties, headaches, insomnia, mental anxiety, and depression. Angus did not allege that the valve implanted in her was defective. The Court of Appeals for the Third Circuit, applying Pennsylvania law, affirmed the lower court's summary judgment for Shiley, holding that the plaintiff could not recover for alleged mental distress absent proof that the valve was defective and absent any physical injury:
 "It seems to us that the Supreme Court of Pennsylvania would find no relief may be granted on the allegations of the complaint here for two independent reasons, either of which would bar this action. First, whatever may have been true in other cases, Angus has not alleged that the valve implanted in her is defective, a pre-requisite to liability in a products liability action. While Angus has not pleaded this case as a classic products liability action, there is no escaping that her action is dependent on Shiley's having supplied the valve. Thus, regardless of how Angus pleaded her claims, they include a products liability aspect. Second, Angus has not suffered a compensable injury as the direct impact from the manufacture, sale, and implanting of the valve was on her emotional state and the allegations of this case will not support a recovery for emotional injuries."
989 F.2d at 147 (citations omitted).
In Brinkman v. Shiley, Inc., 732 F. Supp. 33 (M.D.Pa.), affirmed, 902 F.2d 1558 (3d Cir. 1989), the district court dismissed the plaintiffs' claims, which included claims based on negligence and strict liability theories, because the "heart valve has not failed to function properly," 732 F. Supp. at 34, even though the plaintiffs had alleged intentional and/or negligent representations, in addition to other claims.
In Walus v. Pfizer, Inc., 812 F. Supp. 41 (D.N.J. 1993), the recipient of a prosthetic heart valve manufactured by Shiley sued the manufacturer and a pharmaceutical company, claiming damages based on negligence, strict liability, failure to warn, fraud, misrepresentation, and negligent and intentional infliction of emotional distress. His wife sued to recover damages for loss of consortium. When the plaintiffs sued, the recipient's valve was working normally. The district court, applying New Jersey law, held that under New Jersey product liability law the couple had no cause of action based on their fear that the valve might fail at some unknown time. As to the plaintiffs' fraud claims, the court held that the plaintiffs "cannot avoid the physical harm requirement by recasting their product liability claims as fraud claims." 812 F. Supp. at 45.
In Spuhl v. Shiley, Inc., 795 S.W.2d 573 (Mo.App. 1990), the recipient of a heart valve sued, seeking damages for the infliction of emotional distress he claimed to have sustained as a result of the implantation of two prosthetic heart valves manufactured by Shiley. The plaintiff's heart valve was functioning properly and had not failed, malfunctioned, or caused an accident that injured the plaintiff. The trial court entered a summary judgment in favor of the manufacturer. The Missouri Court of Appeals affirmed, holding that product malfunction or failure is an essential element of a claim based on a negligent failure to warn or seeking the imposition of strict liability based on a failure to warn. 795 S.W.2d at 580-81.
Farsian's heart valve has not failed. Instead, it has been working properly and as intended by its manufacturer, Bjork-Shiley. Although the parties see different theories of this case — Farsian relying upon Alabama fraud law, while Shiley argues in the context of product liability law — we conclude that the answer to the certified question, whether it is couched in terms of fraud law or in terms of product liability law, must be that Farsian does not now have a cause of action for damages, because the valve has not failed.
For the foregoing reasons, we answer the United States Court of Appeals' question in the negative.
QUESTION ANSWERED.
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, KENNEDY, and COOK, JJ., concur.
BUTTS, J., dissents.
[1] The other major difference between the two valves is that for the rest of their lives patients in whom Shiley's valve is implanted must take medication to thin their blood, whereas patients with pig valves need not take the medication.
[2] The valve is basically a disc located inside a ring that is sutured to the heart. It opens and closes rhythmically, allowing blood to flow through the heart. The disc is held in place by two wire holders called inflow and outflow struts, located on each side of the disc. The valve failure relevant to this case is caused when the outflow strut fractures. When the strut is fractured, the disc escapes from the ring, causing uncontrolled blood flow through the heart. Death results in approximately two-thirds of strut fracture incidents.
[3] According to a congressional report, the number of reported fractures and resulting deaths "is generally agreed to be greatly understated because the distress signs of patients with common heart seizures and fracture problems are similar and autopsies are not always taken." *Page 409