813 So.2d 827 (2001)
Travis HINTON, By and Through his mother and next friend, Nona HINTON
v.
MONSANTO COMPANY.
1000599.
Supreme Court of Alabama.
September 14, 2001.
M. Shane Luckado, Birmingham; and David D. Shelby and Robert B. Roden of Shelby & Cartee, L.L.C., Birmingham, for plaintiff.
Warren B. Lightfoot, Jere F. White, Adam K. Peck, Harlan I. Prater IV, and William S. Cox III of Lightgfoot, Franklin & White, L.L.C., Birmingham, for defendant.
S. Allen Baker, Jr., and Eric B. Langley of Balch & Bingham, L.L.P., Birmingham, for amici curiae Business Council of Alabama, the Alabama Chemical Association, and the American Chemistry Council.
W. Stancil Starnes and A. Kelley McLeod of Starnes & Atchison, L.L.P., Birmingham, for amicus curiae Medical Association of the State of Alabama.
Forrest S. Latta and Gabrielle Reeves Pringle of Pierce, Ledyard, Latta, Wasden & Bowron, P.C., Mobile; and Victor E. *828 Schwartz, Mark A. Behrens, and Rochelle M. Tedesco of Crowell & Moring, L.L.P., Washington, D.C., for amicus curiae Product Liability Advisory Council, Inc.
Carol Ann Smith and Joel S. Isenberg of Smith & Ely, L.L.P., Birmingham, for Michael Ignatius Hanna, Jr., M.D., Vishala Chindolore, M.D., Vinton Crawford, M.D., and Jefferson Trupp, M.D., for amicus curiae Group of Anniston Physicians.
D. Frank Davis and Rebecca Williams Block of Burr & Forman, L.L.P., Birmingham, for amici curiae Community Against Pollution and Environmental Working Group.
Donald W. Stewart of Stewart & Smith, P.C., Anniston, for amici curiae 3500 Anniston residents.
STUART, Justice.
The United States District Court for the Northern District of Alabama, Eastern Division, has certified the following question to this Court:
"Does a complaint which does not allege any past or present personal injury to the plaintiff state a cause of action for medical monitoring and study when the plaintiff alleges that he has been exposed to hazardous contamination and pollution by the conduct of the defendant?"
The question presents an issue of first impression in this State. We answer this question in the negative.

Introduction
This Court has before it only a limited recitation of the facts. We therefore summarize the allegations from the plaintiff's complaint as necessary to address the question certified to us.
The plaintiff, Travis Hinton, by and through his mother and next friend, Nona Hinton, on behalf of himself and a putative class of persons similarly situated, filed an action in the federal district court, asserting that he and others similarly situated have been exposed to polychlorinated biphenyls ("PCBs"), a known hazardous substance, released into the environment in the Anniston area by the defendant Monsanto Company. Hinton does not allege that he has sustained a physical injury or an illness as a result of his exposure to PCBs; rather, he seeks to recover the costs of medical monitoring he alleges is necessitated by that exposure. He claims that this need for medical monitoring constitutes a harm sustained by him and that this harm is a result of Monsanto's tortious act of releasing PCBs into the environment.
Hinton argues that medical monitoring (or medical surveillance) of the members of the putative class is necessary in order to detect injuries or illnesses that may arise in the future as a result of the exposure of members of the class to PCBs. His complaint purports to state a cause of action under theories of negligence, wantonness, and strict products liability.
The most striking aspect of Hinton's claim is the lack of a present physical injury or illness among the putative class members. Because the class members do not purport to have a present injury or illness, we are asked to determine whether exposure to a hazardous substance, without a present injury attributable to that exposure, gives rise under Alabama law to a cognizable claim for medical monitoring of the class members. As the question is phrased by the United States District Court, we are asked to determine whether Alabama law recognizes a distinct cause of action for medical monitoring in the absence of a manifest physical injury or illness. We answer the question in the negative.

*829 Analysis

As Monsanto correctly notes, Alabama law has long required a manifest, present injury before a plaintiff may recover in tort. See DeArman v. Liberty Nat'l Life Ins. Co., 786 So.2d 1090 (Ala.2000) (insured's vanishing-premium fraud claim was not ripe until the insured was required to pay premiums beyond the date the policy was to have become totally self-sustaining because the insured had suffered no damage until that date); Stringfellow v. State Farm Life Ins. Co., 743 So.2d 439 (Ala.1999) (same); Williamson v. Indianapolis Life Ins. Co., 741 So.2d 1057 (Ala. 1999) (same); Ford Motor Co. v. Rice, 726 So.2d 626 (Ala.1998) (vehicle owners could not recover under a fraudulent-suppression theory based solely on the possibility that the vehicles could one day roll over because of an alleged design defect in the vehicles); Pfizer, Inc. v. Farsian, 682 So.2d 405 (Ala.1996) (the recipient of a heart-valve implant had no cause of action against the manufacturer of the implant for defective design or for fraud because his heart-valve implant had not malfunctioned and was working properly). We have previously refused to recognize as an "injury" or "damage" under Alabama law, a "concern" that a product "could later" cause a harm. See Farsian, 682 So.2d at 407; see also Rice, 726 So.2d at 629 ("[C]laims based upon ... inherent product `defects' that have not caused any tangible injury are not viable....").
Noted commentators have agreed with this approach. See Victor E. Schwartz et al., Medical Monitoring: Should Tort Law Say Yes?, 34 Wake Forest L.Rev. 1057, 1059 (Winter 1999) ("For over two hundred years, one of the fundamental principles of tort law has been that a plaintiff cannot recover without proof of a physical injury.")(citing William L. Prosser, Handbook on the Law of Torts § 54, at 330-33 (4th ed.1971)); W. Page Keeton et al., The Law of Torts § 30, at 165 (5th ed. 1984) ("The threat of future harm, not yet realized, is not enough.") (footnote omitted).
Although we acknowledge that other jurisdictions have recognized medical monitoring as a distinct cause of action or as a remedy under other tort causes of action, even in the absence of a present physical injury, we do not and need not know how such jurisdictions coordinated that recognition with the traditional tort-law requirement of a present injury. Here, the plaintiff has not alleged a present injury. He seeks simply to recover the costs of monitoring his health to detect whether he develops an illness or an injury in the future as a result of his exposure to PCBs. He has not alleged a cause of action under our long-standing tort law, and we find insufficient justification to expand Alabama law in the direction urged by plaintiff.[1]
Hinton asserts that allowing recovery for the costs of medical monitoring in the absence of a physical manifestation of injury is consistent with Alabama law because, he argues, the costs of all reasonable medical expenses necessarily incurred as a result of a tort are recoverable under Alabama law. He argues that "[t]he fact that there may not be a physical manifestation of injury is of no consequence where there is competent expert testimony that the *830 exposure has significantly increased the risks of contracting a latent disease and [that] more frequent monitoring is medically necessitated because of the exposure." (Hinton's brief to this Court, p. 6). However, our recognizing a cause of action based upon nothing more than an increased risk that an injury or an illness might one day occur would result in the courts of this State deciding cases based upon nothing more than speculation and conjecture.
Hinton's logic appears to be as follows: if enough people are brought into a medical-monitoring program, an illness will eventually be detected and perhaps some of the more serious effects of the illness can be avoided by early detection. This goal is indisputably laudable. The odds are that such a program would benefit some, although not most, of its participants. But what of the ill effects of such an endeavor? How would such a drastic departure from our traditional tort law requiring a manifest, present injury impact the laws of this State? What other areas of the law would also be affected by such a development? What would be the impact upon our statutes of limitation and the legal doctrines that have developed to guide the courts in the application of these statutes?
These are questions upon which we can only speculate at this juncture. To recognize medical monitoring as a distinct cause of action, under the confines presented by this certified question, would require this Court to completely rewrite Alabama's tort-law system, a task akin to traveling in uncharted waters, without the benefit of a seasoned guide. We are unprepared to embark upon such a voyage.
In addition to the flood of legal questions raised by this issue, a "cost-benefit" analysis counsels against recognizing a cause of action for medical monitoring. We recognize, as did the United States Supreme Court in Metro-North Commuter R.R. v. Buckley, 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997), that there are "important competing considerations of a kind that may have led some courts to provide a form of liability" for medical monitoring even in the absence of a manifest injury. Id. at 443, 117 S.Ct. 2113.
"Buckley argues, for example, that it is inequitable to place the economic burden of such care on the negligently exposed plaintiff rather than on the negligent defendant. He points out that providing preventive care to individuals who would otherwise go without can help mitigate potentially serious future health effects of diseases by detecting them in early stages; again, whether or not this is such a situation, we may assume that such situations occur. And he adds that, despite scientific uncertainties, the difficulty of separating justified from unjustified claims may be less serious than where emotional distress is the harm at issue."
Buckley, 521 U.S. at 443, 117 S.Ct. 2113 (citations omitted). Hinton raises many of these same arguments in his brief. He argues that allowing recovery of medicalmonitoring costs will serve the public interest by saving lives and reducing the impact of disease; by deterring polluters from further and future contamination; by reducing the overall costs to the responsible parties by detecting disease at an earlier stage; and by properly requiring the responsible party to pay for the costs associated with medical monitoring.
We have given serious consideration to these concerns and, as meritorious as they are, their counter-arguments must also be given due legal consideration. The Buckley opinion, in refusing to recognize a medical-monitoring claim under the Federal Employer's Liability Act and under the *831 federal common law, noted some of these counter-arguments.
"Since, for example, the particular cancer-related costs at issue are the extra monitoring costs, over and above those otherwise recommended, their identification will sometimes pose special `difficult[ies] for judges and juries.' Those difficulties in part can reflect uncertainty among medical professionals about just which tests are most usefully administered and when. And in part those difficulties can reflect the fact that scientists will not always see a medical need to provide systematic scientific answers to the relevant legal question, namely whether an exposure calls for extra monitoring....
"Moreover, tens of millions of individuals may have suffered exposure to substances that might justify some form of substance-exposure-related medical monitoring. (The dissent limits its class of potential plaintiffs to employees suing their employers, but other exposed individuals, who satisfy the [In re] Paoli [Railroad Yard PCB Litigation, 916 F.2d 829 (3d Cir.1990) ] test could sue at common law.) And that fact, along with uncertainty as to the amount of liability, could threaten both a `flood' of less important cases (potentially absorbing resources better left available to those more seriously harmed) and the systematic harms that can accompany `unlimited and unpredictable liability' (for example, vast testing liability adversely affecting the allocation of scarce medical resources). The dissent assumes that medical monitoring is not a `costly' remedy. But Buckley here sought damages worth $950 annually for 36 years; by comparison, of all claims settled by the Center for Claims Resolution, a group representing asbestos manufacturers, from 1988 until 1993, the average settlement for plaintiffs injured by asbestos was about $12,500, and the settlement for nonmalignant plaintiffs among this group averaged $8,810.
"Finally, a traditional, full-blown ordinary tort liability rule would ignore the presence of existing alternative sources of payment, thereby leaving a court uncertain about how much of the potentially large recoveries would pay for otherwise unavailable medical testing and how much would accrue to plaintiffs for whom employers or other sources (say, insurance now or in the future) might provide monitoring in any event. Cf. 29 C.F.R. § 1910.1001(l) (1996) (requiring employers to provide medical monitoring for workers exposed to asbestos).... [W]here state and federal regulations already provide the relief that a plaintiff seeks, creating a full-blown tort remedy could entail systemic costs without corresponding benefits. Nor could an employer necessarily protect itself by offering monitoring, for that is not part of the rule of law that Justice Ginsburg would endorsea rule that, if traditional, would, as we have noted, allow recovery irrespective of the presence of a `collateral source' of payment."
Buckley, 521 U.S. at 441-443, 117 S.Ct. 2113 (some citations omitted).
We do not intend to minimize the concerns that Hinton and the other members of the putative class face and we do not deny that they have suffered a wrong at the hands of a negligent manufacturer, assuming the plaintiffs' allegations can be proven. However, we find it inappropriate, within the confines of this certified question, to stand Alabama tort law on its head in an attempt to alleviate these concerns about what might occur in the future. We believe that Alabama law, as it currently exists, must be applied to balance the delicate and competing policy considerations presented here. That law *832 provides no redress for a plaintiff who has no present injury or illness.
Accordingly, for the reasons identified above, we answer the question in the negative: Alabama law does not recognize a cause of action for medical monitoring.
QUESTION ANSWERED.
HOUSTON, SEE, and JOHNSTONE, JJ., concur.
MOORE, C.J., and LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur in the result.
LYONS, Justice (concurring in the result).
The certified question presented to this Court, as phrased, is premised upon the absence of any past or present personal injury. I would not amend the question to include a past or present personal injury based solely on allegedly abnormal exposure to a hazardous material and an increased risk of illness. To do so requires us to contradict the United States District Court's statement that the complaint does not allege any past or present physical injury. The array of practical difficulties presented by a claim based on recognition of a theory of such early accrual of a cause of action should await another day.
Turning to the question as phrased by the district court, this Court, dealing with a similar issue involving the accrual of a cause of action for radiation exposure, stated the question as follows: "When does the statute of limitations begin to run for injuries suffered as a result of radiation exposure?" Garrett v. Raytheon Co., 368 So.2d 516, 517-18 (Ala.1979). This Court then answered the question as follows: "We conclude that it begins to run when the plaintiff is exposed to radiation and an injury occurs." Id. (emphasis added). Recently, in Payton v. Monsanto Co., 801 So.2d 829, 835 (Ala.2001), this Court quoted Ex parte Floyd, 796 So.2d 303, 308 (Ala.2001):
"`Thus, if the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date. It is only when the first legal injury occurs that the cause of action accrues and the limitations period begins to run.'"
Under established precedent, absent a physical injury, a cause of action has not accrued. The certified question specifically states that the complaint in this case alleges no past or present injury; therefore, no cause of action has accrued.
I, therefore, concur in the result reached by the majority.
HARWOOD, J., concurs.
NOTES
[1] Hinton asserts that this Court, in Ex parte Russell Corp., 703 So.2d 953 (Ala.1997), implicitly recognized that a person exposed to a toxic substance need not establish a physical manifestation of injury before recovering the costs of medical monitoring. We note that the Ex parte Russell opinion addressed the adequacy of the putative class representative under Rule 23, Ala. R. Civ. P., and did not, explicitly or implicitly, decide that medical monitoring was a cognizable cause of action or a remedy under Alabama law. We do not find the plaintiff's characterization of Ex parte Russell Corp. persuasive.